IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHIL LIFSCHITZ, <br><br> Plaintiff, <br><br> v. <br><br> DIVERSIFIED HEALTHCARE TRUST, JENNIFER F. FRANCIS, JOHN L. HARRINGTON, LISA HARRIS JONES, DANIEL F. LEPAGE, DAVID A. PIERCE, ADAM D. PORTNOY, and JEFFREY P. SOMERS, <br><br> Defendants. | Case No. <br><br> COMPLAINT <br><br> DEMAND FOR JURY TRIAL |

Plaintiff Phil Lifschitz ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff brings this action against Diversified Healthcare Trust ("DHC" or the "Company") and the members of DHC's Board of Trustees (the "Board" or the "Individual Defendants," and together with the Company, "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, arising out of their agreement to be acquired by Office Properties Income Trust ("OPI"), a real estate investment trust externally managed by the same alternative asset management as DHC, The RMR Group Inc. ("RMR") (the "Proposed Transaction").

2.      On April 11, 2023, DHC and OPI entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which DHC stockholders will receive 0.147 newly issued shares of OPI common stock for each share of DHC common stock that they own.

3.      On July 21, 2023, DHC filed a Definitive Proxy Statement (the "Proxy Statement") with the SEC, which omits or misrepresents material information concerning the Proposed Transaction. The failure to adequately disclose such material information renders the Proxy Statement false and misleading.

4.      The stockholder vote to approve the Proposed Transaction is forthcoming. Under the Merger Agreement, following a successful stockholder vote, the Proposed Transaction will be consummated. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of the Company's common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes

whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's stock trades on The Nasdaq Global Select Market, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of DHC.

9. Defendant DHC is a Maryland corporation, with its principal executive offices located at 255 Washington Street, Suite 300, Newton, Massachusetts 02458. DHC's common stock trades on The Nasdaq Global Select Market under the ticker symbol "DHC."

10. Defendant Jennifer F. Francis is, and has been at all relevant times, President, Chief Executive Officer ("CEO"), and a trustee of the Company.

11. Defendant John L. Harrington is, and has been at all relevant times, a trustee of the Company. Defendant Harrington also serves as a trustee of OPI.

12. Defendant Lisa Harris Jones is, and has been at all relevant times, Lead Independent Trustee and a trustee of the Company.

13. Defendant Daniel F. LePage is, and has been at all relevant times, a trustee of the Company.

14. Defendant David A. Pierce is, and has been at all relevant times, a trustee of the Company.

15. Defendant Adam D. Portnoy is, and has been at all relevant times, a trustee of the Company. Defendant Portnoy also serves as a trustee of OPI.

16. Defendant Jeffrey P. Somers is, and has been at all relevant times, a trustee of the Company. Defendant Somers also serves as a trustee of OPI.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants," and together with DHC, "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **Background of the Company**

18. DHC is a REIT which primarily owns medical office buildings ("MOB") and life science properties, senior living communities and other health care related properties throughout the United States. As of March 31, 2023, DHC's consolidated portfolio consisted of 376 properties located in 36 states and Washington, D.C. DHC's portfolio as of March 31, 2023 included (i) 105 MOB and life science properties with approximately 8.8 million rentable square feet, (ii) 261 senior living communities, including independent living (including active adult), assisted living, memory care and skilled nursing facilities, with 27,389 living units, and (iii) 10 wellness centers with approximately 0.8 million square feet of interior space plus outdoor developed facilities. The gross book value of DHC's real estate assets at cost plus certain acquisition costs, before depreciation and purchase price allocations and less impairment write downs, was $7.1 billion at March 31, 2023. As of March 31, 2023, DHC also owned an equity interest in each of two unconsolidated joint ventures that own MOB and life science properties located in five states with an aggregate of approximately 2.2 million rentable square feet that were 99% leased with an average (by annualized rental income) remaining lease term of 5.8 years.

B. **The Proposed Transaction**

19. On April 11, 2023, DHC and OPI issued a joint press release announcing the Proposed Transaction stating, in pertinent part:

> NEWTON, Mass.--(BUSINESS WIRE)-- Office Properties Income Trust (Nasdaq: OPI) today announced that it has entered into a definitive merger agreement with Diversified Healthcare Trust (Nasdaq: DHC), pursuant to which OPI will acquire all of the outstanding common shares of DHC in an all-share transaction. OPI will be the surviving entity in the merger and expects to change its name to "Diversified Properties Trust" upon the closing of the transaction and to continue to trade on The Nasdaq Stock Market LLC. The transaction was unanimously recommended by special committees of the respective Board of Trustees of OPI and DHC comprised of independent, disinterested trustees, and unanimously approved by the respective Board of Trustees.
>
> Pursuant to the merger agreement, DHC shareholders will receive 0.147 shares of OPI for each common share of DHC based on a fixed exchange ratio resulting in OPI shareholders owning approximately 58% of the combined company, and DHC shareholders owning approximately 42% of the combined company.
>
> Concurrent with today's announcement, OPI's Board of Trustees announced that it expects to reset OPI's cash distribution rate to $0.25 per share per quarter, or $1.00 per share per year, beginning in the second quarter of 2023. The new distribution rate will increase financial flexibility for OPI through the closing of the transaction and for the combined company post-closing.
>
>> Christopher Bilotto, OPI's President and Chief Operating Officer made the following statement:
>>
>> "The merger establishes the combined company as a larger, more diversified REIT, better positioned for long-term growth and value creation for OPI shareholders. DHC has an attractive portfolio of healthcare real estate assets, including a portfolio of medical office and life science properties, with a work from home resistant tenant base, as well as private pay senior living communities that are expected to benefit from a strategic turnaround, a continued post-pandemic recovery and favorable long-term demographics."
>>
>> "Against a challenging backdrop for traditional office assets, this merger provides OPI access to stabilized cash flows from DHC's medical office and life science portfolio and NOI growth potential from its senior housing portfolio. OPI also expects to benefit from access to additional capital sources, including from low-cost government-sponsored sources, such as Fannie Mae and Freddie Mac. In addition, the distribution reset will provide OPI with

increased financial flexibility, and the merger is expected to be accretive to OPI's normalized funds from operations and cash available for distribution beginning in the second half of 2024."

"I am confident that the merger will create a stronger and more resilient combined company with more diversified revenue sources and decreased exposure to a weakening office market environment. I am excited for shareholders to benefit from the growth potential of the combined company."

The combined company will be led by the OPI executive management team and managed by The RMR Group (Nasdaq: RMR) and will be headquartered in Newton, MA. The transaction is subject to the approval of OPI and DHC shareholders and other customary closing conditions and is expected to close during the third quarter of 2023. RMR has agreed to waive the contractual termination fees associated with the DHC business management agreement and property management agreement with respect to the transaction.

OPI has secured a commitment from JPMorgan Chase Bank, NA for a $368 million bridge loan facility to help finance closing of the transaction.

**Advisors**

J.P. Morgan Securities LLC is acting as exclusive financial advisor and Wachtell, Lipton, Rosen & Katz is acting as legal advisor to the special committee of OPI's Board of Trustees in this transaction. JPMorgan Chase Bank, NA arranged OPI's bridge loan.

### C. False and Misleading Statements and/or Material Omissions in the Proxy Statement

20. On September 12, 2022, Defendants filed the materially incomplete and misleading Proxy Statement with the SEC and disseminated it to DHC's stockholders. Designed to convince the Company's stockholders to vote in favor of the Proposed Transaction, the Proxy Statement is rendered misleading by the omission of critical information.

21. Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed

decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

22. First, the Proxy Statement omits material information or provides materially misleading information regarding the Company's and OPI's financial projections. Specifically, the Proxy Statement fails to disclose the line items underlying the Company's and OPI's: (i) NOI; (ii) Adjusted EBITDA*re*; (iii) Normalized FFO; (iv) Cash NOI; and (v) Unlevered Free cash Flow.

23. Courts have routinely held management's financial projections are among the most important information a stockholder can have when evaluating the proposed consideration in a merger. See Brown v. Brewer, No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *70 (C.D. Cal. June 17, 2010) (denying defendants' motion for summary judgment on the issue of management's financial projections, the court held that "A reasonable shareholder would have wanted to independently evaluate management's internal financial projections to see if the company was being fairly valued. [T]here is a substantial likelihood that a reasonable shareholder would consider it important in making his decision.") (brackets in original) (internal quotation marks omitted); In re Netsmart Techs., Inc., S'holders Litig., 924 A.2d 171, 203 (Del. Ch. 2007) (company's financial projections "are probably among the most highly-prized disclosures by investors"); In re Staples, Inc. S'holders Litig., 792 A.2d 934, 958 n.44 (Del. Ch. 2001) ("One suspects that the projections are the information that most stockholders would find the most useful to them."). See also SEC v. Nat'l Student Mktg. Corp., 457 F. Supp. 682, 707 (D.D.C. 1978) (quoting Republic Technology Fund, Inc. v. Lionel Corp., 483 F.2d 540, 547 (2d Cir. 1973)) ("In a merger transaction such as that presented here, accurate financial information is necessary in order for a shareholder fairly to be able to vote.").

24. Second, the Proxy Statement omits material information regarding the financial analyses performed by the Company's financial advisor BofA Securities LLC ("BofA").

25. With respect to BofA's Selected Publicly Traded Companies Analysis and Selected Precedent Transactions Analysis of DHC and of OPI, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies and transactions analyzed by BofA.

26. With respect to BofA's Discounted Cash Flow Analysis of DHC, the Proxy Statement fails to disclose: (i) the terminal year cash flows; (ii) the Company's terminal values; (iii) DHC's net debt as of April 6, 2023; and (iv) the number of fully diluted outstanding shares of DHC's common stock.

27. With respect to BofA's Discounted Cash Flow Analysis of OPI, the Proxy Statement fails to disclose: (i) the unlevered, after-tax recurring free cash flows of OPI for 2023 through 2027; (ii) the terminal year cash flows; (iii) OPI's terminal values; (iv) OPI's net debt as of April 6, 2023; and (v) the number of fully diluted outstanding shares of OPI's common stock.

28. Third, The Proxy Statement fails to disclose material information relating to the background of the Proposed Transaction.

29. For example, the Proxy Statement fails to disclose the amount of business management incentive fees for DHC or OPI that RMR is likely to earn in 2024, based on the incentive fee calculations prepared by RMR.

30. The omission of the above-referenced material information renders the following sections of the Proxy Statement false and misleading: "Unaudited Prospective Financial Information of OPI," "Unaudited Prospective Financial Information of DHC," "Opinion of the Financial Advisor to the DHC Special Committee" and "Background of the Merger."

## COUNT I

### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

31. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

33. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or trustees, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

35. By reason of the foregoing, the Defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

36. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### For Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

37. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if set forth in full.

38. The Individual Defendants acted as controlling persons of DHC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or trustees of DHC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

41. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed

Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company trustees had input into.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, DHC's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to DHC stockholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: August 11, 2023                                 Respectfully submitted,

                                                                By  /s/ *Shallom Engel*
                                                                Shallom Engel
                                                                **Engel Law PLLC**
                                                                1065 Broadway, Suite 103
                                                                Woodmere, NY 11598
                                                                Telephone: (718) 880-8595
                                                                Email: shallom@engellawpllc.com

                                                                *Attorneys for Plaintiff*